FILED
2012 Feb-06  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **BOBBY LYNN SHULER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.10-PT-1993-E** |
| | ) | |
| **JACK LOGAN, and individual,** | ) | |
| **and LANDSPAN, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

COME NOW, Defendants Jack Logan and Landspan, Inc., and in reply to the Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment, state as follows:

### I.  ISSUES OF FACT

Plaintiff objects to Defendants' description of the when and why Mr. Logan changed lanes.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 1-3, hereinafter "Doc. #18").  At least, all parties agree that Mr. Logan moved from the left hand lane to the right hand lane because the vehicles in the right hand lane were moving slowly.  His intent was to pass the slow moving traffic in what is commonly referred to as the "passing lane."  Plaintiff next objects to Defendants' description of when Mr. Logan first saw

Plaintiff's vehicle after changing lanes.  Defendant submits, for the purpose of this Motion, that Mr. Logan did not see the sand truck when he first changed lanes, but when he first perceived the sand truck, he was "four to five" truck lengths behind it. (Logan Dep. 89:24-90:2, Aug. 2, 2011, excerpts attached hereto as **Ex. A**).

As far as Plaintiff's additional statement of facts, Plaintiff states his hazard lights were on at the time of the accident, and cites his deposition in support thereof. (Doc. #18 11, *citing* Shuler Dep. 103:18-104:5, Nov. 9, 2010, excerpts attached hereto as **Ex. B**).  However, Mr. Shuler's deposition testimony is unclear on whether his hazards were on. (Shuler Dep. 103:18-104:19, "They was on, but sometimes the hazard, when you turn the blinker on, sometimes they'll go off.").

Plaintiff offers Eric Templin's testimony that a truck hauling hazardous waste be statutorily required to travel at a reduced speed limit.  (Doc. #18 10). Though Mr. Templin correctly references Ala. Code (1975) § 32-5A-171, Mr. Logan was not hauling enough hazardous waste to require a placard and fall within the purview of that statute. (*See* Invoice Sheet and Bill of Lading, attached hereto as **Ex. C**). The sheet indicates that Mr. Logan was carrying 170 pounds of a corrosive material which requires a placard when carried in quantities exceeding 1,001 lbs.  Accordingly, Mr. Logan was not subject to any special hauling rules due to the hazardous materials in his load.

Finally, Plaintiff again states that Mr. Logan had no idea how far away the sand truck was in terms of feet or seconds when he first noted it.  However, Mr. Logan's testimony is that he was "four to five" truck lengths behind the sand truck when he first perceived it.  (Logan Dep. 89:24-90:2).

## II. INTRODUCTION

*Ex parte Essary*, 992 So. 2d 5 (Ala. 2007), attached hereto as **Exhibit D** with relevant portions underlined in heavy typeface, and discussed *infra*, is a game changer with regard to wantonness claims in Alabama.  A recent opinion by Judge Myron Thompson, *Jinright v. Werner Enters.*, 607 F. Supp. 2d 1274 (M.D. Ala. 2009), attached hereto as **Exhibit E** with relevant portions underlined in heavy typeface, discusses the *Essary* presumption and its effect:

> Essentially, because wantonness requires knowledge that the conduct is likely to result in harm, if the behavior at issue is similarly likely to harm the perpetrator (as it is, for example, in most cases involving car accidents), Alabama courts will presume that, given their understanding of human nature, people would not consciously engage in conduct so openly harmful to themselves.
>
> **Essary's presumption thus prevents a circumstantial inference of wantonness unless there is reason to believe that the defendant was suffering from "impaired judgment" or if the conduct was so "inherently reckless" that it would signal the kind of "depravity consistent with disregard of instincts of safety and self-preservation**."

*Id.* at 1276-77 (bold added).   Therefore, contrary to Plaintiff's assertions, **a circumstantial inference of wantonness is insufficient unless the Plaintiff can produce evidence of: a) impaired judgment or b) conduct so inherently reckless as to overcome the *Essary* presumption of personal preservation**.   *Ex Parte Essary,* 992 So.2d at 15.   Examples of inherently reckless conduct which "call into question *Essary*'s presumption" include "driving in reverse on a major interstate, *Johnson v. Baldwin*, 584 F.Supp.2d 1322 (M.D. Ala. 2008), [and] driving through an intersection 'at a very fast speed' after ignoring a stop sign, *Clark v. Black*, 630 So.2d 1012, 1016 (Ala. 1993))." *Jinright v. Werner Enters*., 607 F. Supp. 2d at 1274 (internal citations omitted).

Plaintiff presents absolutely no evidence of impaired judgment.   Further, the conduct complained of is not so inherently reckless that it calls into question the presumption that Mr. Logan would not risk his safety.   Changing lanes on the interstate to pass a column of slow moving vehicles is not of the same character as driving backwards on the interstate or speeding through an intersection after ignoring a stop sign.   This is true even when the roads are wet and there is an accident across the median. This is true of a professional driver hauling an average load of an average weight.   At most, Plaintiff may show that Mr. Logan failed to notice his own truck in time to prevent the accident.   In the absence of evidence to rebut the *Essary*

presumption, Defendants are entitled to judgment as a matter of law.  This argument alone is all the Defendants require to counter Plaintiff's brief, which contains no post-*Essary* law and which misinterprets the holding in *Essary*. However, out of an abundance of caution, Defendants respond to Plaintiff's specific arguments below.

## II.   SPECIFIC RESPONSE TO PLAINTIFF'S ARGUMENT

### A.   Plaintiff's arguments regarding the circumstances in this case do not establish that Mr. Logan knew that injury would likely occur or was engaged in inherently reckless conduct.

In two portions of his brief, the Plaintiff offers a number of premises in an effort to prove Mr. Logan was conscious that injury would likely occur.   The following were offered to show that Mr. Logan's conduct was "intentional" and "premeditated":

1) Mr. Logan did not know which part of Mr. Shuler's truck he hit.

2) Mr. Logan was unsure how far away Mr. Shuler's truck was when he first observed it.

3) Mr. Logan was aware of the wet road, rubber neckers, a slow moving right lane, and a wreck across the median.

4) Mr. Logan moved into the left hand lane to accelerate.

(Doc. #18 26).  With regard to the first "frank" admission, it is difficult to conceive of how failing to recall the precise point of impact on Mr. Shuler's truck leads to the conclusion that one intentionally struck it. To the extent that his

recollection is relevant to the issue of wantonness, Mr. Logan testified that he thinks he struck the Plaintiff's vehicle "squarely" in the back (Logan Dep. 57:8-10), though the Plaintiff notes that his truck was struck in the back to the right, not squarely. As far as the second "frank" admission regarding his distance from Mr. Shuler's truck, Mr. Logan estimates that Mr. Shuler's truck was four to five truck lengths away when he noticed it, though he was reluctant to estimate the distance in feet or seconds during his deposition.   Again, how this leads to the conclusion that Mr. Logan intended or premeditated the accident is unclear.

Regarding Mr. Logan's third and fourth "frank" and "candid" admissions, Defendant repeats that absent a showing of impairment, the Plaintiff must prove that Mr. Logan's actions were so inherently reckless as to overcome the *Essary* presumption.  **There is nothing inherently reckless about changing lanes to pass slow moving vehicles, even when the road is wet, there is a wreck across the median, and rubber neckers had been slowing to look at the wreck**.  Mr. Logan was not exceeding the speed limit, traveling at an estimated 50 miles per hour.  Fifty miles per hour is  approximately the same speed at which Mr. Shuler was traveling on the same interstate in the same conditions, as evidenced by Mr. Shuler's testimony that he "slowed down to 50." (Shuler Dep. 113:23-114:2).[1]

---

[1]In Note 5, Plaintiff states that there is evidence that Mr. Logan was exceeding the speed limit by 15 miles per hour.  This statement is based on the state trooper's report, which states Mr. Logan was traveling 70 miles per hour in a 70 mile per hour zone, so Plaintiff's note is misleading. If these facts were true, this does not show that Mr.

The Plaintiff offers another list which supposedly proves wanton behavior:

1.    Jack Logan is a trained certified professional truck driver;
2.    Mr. Logan was hauling hazardous materials;
3.    Mr. Logan was traveling down the highway pulling 65 thousand pounds;
4.    Mr. Logan knew the road conditions were wet and/or there had been rain;
5.    There had been stop and go conditions "all day long" in the west (Logan) bound lane of I-20;
6.    The right hand lane of I-20 (westbound) was significantly clogged or crowded;
7.    In order to increase his pace, Logan entered into the lefthand (inside) lane of westbound I-20 and began to accelerate;
8.    At the time he collided with Shuler's truck, Logan was continuing to accelerate.

(Doc. #18 29).  The Plaintiff's first three items imply that Mr. Logan had a heightened duty of care or a particularly dangerous load.  As discussed earlier, while hazardous materials were in his load, the quantities were such that there were no special rules for his driving.  Mr. Logan was not "pulling" 65,000 pounds, that was the weight of his tractor, trailer and load combined.  His weight ticket shows that his load was 32,152 pounds, (*See* Ex. C) which is not overweight or otherwise unusual. While, as a commercial driver, Mr. Logan must comply with additional rules of driving, he does not have a heightened duty of care due to his professional status, the hazardous materials in his load, or the weight of his truck.  Neither do any of these conditions qualify as particularly dangerous or even mildly unusual.

---

Logan was speeding, and there is no admissible evidence that Mr. Logan was speeding.

The fourth through seventh items have been discussed above.  Defendant restates that, even under the conditions, there is nothing inherently dangerous, reckless, careless, etc. with moving into the passing lane to pass a slow moving column of vehicles.

As far as the eighth item, that Mr. Logan was accelerating at the time of the collision, the Plaintiff *grossly* mischaracterizes Mr. Logan's testimony.   The supporting testimony is as follows:

> Q. ... You had pulled out of a slow-moving right-hand lane and [were] actually gaining speed in the left-hand lane when you first perceived him?
>
> MR. GODWIN: Object to the form.
>
> A. Yes, I was.

(Logan Dep. 90:10-14).  Yes, Mr. Logan was initially accelerating upon changing lanes, a common and necessary maneuver when passing. However, when he realized there was a danger of a collision due to the stopping sand truck, he began a "stab and steer" maneuver, which means he "hit his brakes as hard as [he] could and tried to steer in a straight line." (Logan Dep. 55:1-11).  The assertion that Mr. Logan was accelerating at the time of the collision is misleading and completely unsupported by the evidence.

8

**B.**     **The Plaintiff's supporting authority and attempts to distinguish Defendants' authority are unconvincing.**

1.     Plaintiff's Reliance upon *Lewis v. Zell*, 181 So. 2d 101 (Ala. 1955); *Monroe v. Brown*, 307 F.Supp.2d 1268 (M.D. Ala. 2004); and *Tirey v. Boyte*, 2005 U.S. Dist. LEXIS 44333 (S.D. Ala. May 19, 2005).

Plaintiff offers the case of *Lewis v. Zell*, in which the Court held that the requisite knowledge to establish wanton conduct could be inferred from the fact that a police officer testified that the defendant ran a red light.  The police officer's testimony implied that the defendant knew the light was red, yet consciously proceeded into the intersection.  So, in *Zell*, the defendant saw the danger, yet proceeded anyways.  This case is inapplicable. First, a circumstantial showing of wantonness has been changed by *Essary*, as discussed above. Further, the case is distinguishable on the facts. Mr. Logan did not see the danger, yet proceed anyways. On the contrary, Mr. Logan thought his lane was clear.  He testified that he did *not* see Mr. Shuler's truck until it was too late to prevent the accident. Once he realized that the sand truck was moving very slowly or stopped, he did not continue, Mr. Logan attempted the "stab and steer" maneuver, but was unable to stop in time to avoid the accident.

Plaintiff offers another pre-*Essary* opinion, in which Judge Myron Thompson engages in a thorough analysis of Alabama's yellow light statute, following distance

statute, and cases involving car accidents at intersections. *Monroe v. Brown*, 307 F.Supp.2d 1268 (M.D. Ala. 2004). In this case, Judge Thompson found that the plaintiff's claim of wantonness survived summary judgment because the defendant *knew* that he was approaching an area where he must slow (a yellow light in an intersection), *knew* he had not maintained sufficient distance, and *knew* that the plaintiff had signaled that he might stop by tapping his brakes. *Id.* at 1276.

The current case is distinguishable in that it does not involve an intersection. Further, there is not a shred of evidence that Mr. Logan *knew* he was going to need to stop because Mr. Shuler was slowing and stopping, yet continued on the same course. Generally, one does not expect regular stops in the left lane of the interstate, especially when one is no longer in a traffic jam. Likewise, there is not a shred of evidence that Mr. Logan knew that he was too close to Mr. Shuler's truck, or even knew that Mr. Shuler was slowing and/or stopping his vehicle until it was too late to avoid the collision. Therefore, this case is inapplicable. *Jinright v. Werner Enters.*, 607 F. Supp. 2d 1274, a more recent and applicable opinion by Judge Thompson is discussed above and below.

Plaintiff also offers *Tirey v. Boyte*, 2005 U.S. Dist. LEXIS 44333 (S.D. Ala. May 19, 2005), in support of his position. In that case, the Court denied the defendant's Motion for Summary Judgment on the issues of wantonness. However, on May 4, 2005, based on the same facts, the Court entered judgment as a matter of

law in favor of the defendant on the wantonness claim, stating that "no reasonable jury could find that Defendant's actions constituted a conscious and deliberate disregard for the safety of others."   The Court concluded that even though the defendant admitted that she saw the plaintiff's vehicle prior to pulling out, at most, the evidence showed the defendant negligently misjudged the distance.   There was no evidence to establish wantonness. *Tirey v. Boyte*, 2005 U.S. Dist. LEXIS 44334, *5-6 (S.D. Ala. Aug. 4, 2005), attached hereto as **Ex. F** with relevant portions underlined in heavy typeface. Here, the evidence shows, at most, that Mr. Logan failed to note the vehicle stopping in the left lane in time to prevent the collision.

> 2.   Plaintiff's Attempts to Distinguish *South Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795 (Ala. 1990); *Ex parte Anderson*, 682 So. 2d 467 (Ala. 1996); and *George v. Champion Ins. Co.*, 591 So.2d 852, 853-54 (Ala. 1991).

Plaintiff attempts to distinguish *South Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795, by stating that Mr. Logan was not distracted as the defendant in *Branum*. Plaintiff then suggests that a jury could conclude that Mr. Logan was "rubbernecking" when he struck Mr. Shuler's truck. (Doc. #18 31).   What is rubbernecking but distraction? This position supports the application of *Branum*.  In *Branum*, the defendant, who was aware of a potentially unsafe condition (e.g. the presence of pedestrians) was distracted and did not notice the plaintiff until it was too late to avoid an accident.  In the instant case, Plaintiff suggests that Mr. Logan, who

was aware of a potentially unsafe condition (e.g. wet roads and a wreck across the median), was distracted and did not notice Plaintiff until it was too late to avoid an accident.

Plaintiff argues that *Ex parte Anderson*, 682 So. 2d 467, is inapplicable because the defendant in *Anderson* was not a professional driver and broke only one "rule" of driving. (Doc. #18 33). Again, Mr. Logan's commercial driver's license does not impose a heightened standard of care. Further, the number of rules the defendant in *Anderson* broke had nothing to do with the Court's conclusion.  Rather, the Court held that although the defendant made a conscious decision to make a blind turn in rainy conditions into oncoming traffic, this consciousness was not the type of consciousness or knowledge required to support a finding of wantonness. In short, it did not show that she was conscious that injury would likely occur.  In this case, Mr. Logan's conscious decision to change lanes and subsequent failure to note the sand truck in time to stop does not prove that he was conscious that injury would likely occur.  In short, as in *Anderson*, while Mr. Logan was aware of the wet conditions and the traffic issues, he was not aware of the presence of Mr. Shuler's truck until it was too late to prevent the accident.

The Plaintiff argues that *George v. Champion Ins. Co.*, 591 So.2d 852, is inapplicable because the defendant in that case was not inattentive, but made a driving error. (Doc. #18 34). However, the *George* Court recites that the defendant

was inattentive while speaking with her passenger *and* made a driving error. *Id.* at 854. The Court held that more than inattention *or* inadvertence are needed to support an allegation of wantonness and the Plaintiff failed to meet this burden, showing inadvertence at most. The same is true in the present matter.

3.      Proper application of *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007).

The Plaintiff discusses *Essary*, the premiere Alabama case on wantonness, which has been consistently followed in both the state an federal courts on that issue.[2] As previously briefed, the *Essary* Court reasoned that in a car accident case, "the risk of injury to [the defendant] himself was as real as any risk of injury to the plaintiffs," and a defendant is not "expected to engage in self destructive behavior" absent evidence of impaired judgment, such as intoxication. *Id*. at 12. Therefore, there is a rebuttable presumption that:

> [E]very person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal

---

[2]*See Jinright v. Werner Enters.*, 607 F. Supp. 2d 1274 (M.D. Ala. 2009) (granting summary judgment in favor of the defendant on a wantonness claim); *Johnson v. Baldwin*, 584 F. Supp. 2d 1322 (M.D. Ala. 2008) (denying summary judgment in favor of the defendant on the Plaintiff's wantonness claim when the driver drove backwards on the interstate at high speeds); *Lafarge N. Am., Inc. v. Nord*, 2011 Ala. LEXIS 157 (Ala. Spet. 23, 2011) (reversing the denial of the defendant's motion for judgment as a matter of law on wantonness); *Norfolk S. Ry. Co. v. Johnson*, 2011 Ala. LEXIS 29 (Ala. Mar. 11, 2011) (holding that the defendant was entitled to judgment as a matter of law on the plaintiff's wantonness claim); *Cheshire v. Putman*, 54 So. 3d 336 (Ala. 2010) (reversing a finding of wantonness against the defendant); *Price v. Macon County Greyhound Park, Inc*., 2011 Ala. Civ. App. LEXIS 219 (Ala. Civ. App. Aug. 19, 2011) (upholding summary judgment in favor of the defendant on the plaintiff's wantonness claim); *Mandella v. Pennington*, 73 So. 3d 1257 (Ala. Civ. App. 2011) (affirming summary judgment in favor of the defendant on a wantonness claim); *Frederick v. Wallis*, 3 So. 3d 904 (Ala. Civ. App. 2011) (affirming summary judgment in favor of the defendant on the wantonness claim).

protection.  It is founded on a law of nature and has [as] its motive the fear of pain or death.

*Essary*, 992 So. 2d at 12 (internal citations omitted).  Black's Law Dictionary 1224 (8th ed. 2004) defines a "rebuttable presumption" as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence."

Plaintiff argues that the "**defendants in this case** have failed to rebut the 'presumption' that Jack Logan was in possession of his normal faculties when he entered into a situation he knew to be dangerous to himself." (Doc. #18 35).  Plaintiff misstates the law.  *Essary* establishes that because the risk of injury was as great to Mr. Logan as it was to Mr. Shuler, there is a presumption that he would not drive in a manner that he knew would probably result in injury to himself.

To overcome this presumption, it is <u>Plaintiff's</u> burden to present contrary evidence of impaired judgment, such as intoxication.  *See Frederick v. Wallis*, 3 So. 3d 904, 908-09 (Ala. Civ. App. 2011) (upholding the trial court's entry of judgment as a matter of law on the plaintiff's wantonness claim, in part, because "[a]s in *Essary*, the potential of injury to [the defendant] was as real as that to the driver or passengers of any oncoming vehicle and there was no evidence presented indicating that [the defendant's] judgment was impaired by alcohol or any other source.").  In this case, the potential risk to Mr. Logan and his wife was certainly as grave as the

potential risk to Mr. Shuler, as evidenced by the extensive injuries suffered by the Logans.[3] Therefore, Plaintiff must present contrary evidence of impaired judgment to overcome the presumption that Mr. Logan would not risk injury to himself. Yet, Plaintiff has presented no evidence that Mr. Logan's judgment was impaired by alcohol or otherwise. This is precisely the type of situation to which the *Essary* presumption applies, and there has been no evidence offered to show that Mr. Logan would not avoid the serious injuries which he and his wife sustained.

In addition to misinterpreting the law of *Essary*, the Plaintiff also distinguishes *Essary* on its facts, noting that the defendant in *Essary* was not a professional driver subject to company safety rules, and there was no evidence of dangerous road conditions prior to the accident. Again Plaintiff has offered no evidence of a heightened standard of care for a professional driver. While *Essary* does not involve a dangerous road condition in the form of a wet road or an accident across the median, *Essary* involves a dangerous condition *created by the defendant*–coming to a rolling stop at an intersection and attempting to "shoot the gap" between two cars. *Id.* at 11. In the present matter, the dangerous condition was less obvious and was not created be the defendant himself.

---

[3]Mr. Logan lost consciousness, sustained a cut to his forehead. His shoulder, and right humerus were "almost totally destroyed." (Logan Dep. 34:9-13). Mr. Logan has been unable to return to work due to his injuries. (Logan Dep. 93:24-94:4). Mr. Logan's wife sustained a serious injury to her knee and sustained facial fractures. (Logan Dep. 33:8-13).

As stated previously, to overcome the *Essary* presumption, the Plaintiff must show either: a) impaired judgment or b) conduct so inherently reckless as to overcome the presumption of self preservation.  Plaintiff has failed to show either; therefore, Defendant is entitled to judgment as a matter of law.

4.    *Cryer v. Werner Ent., Inc.*, 2007 U.S. Dist. LEXIS 95847 (N.D. Ala. Jan. 23, 2007), attached hereto as **Ex. G** with relevant portions underlined in heavy typeface.

In *Cryer v. Werner Ent., Inc.*, 2007 U.S. Dist. LEXIS 95847, the defendant driver attempted a U-turn across a median on a four-lane highway in moderate traffic, in violation of company safety rules. As with any wantonness claim, to survive summary judgment, the plaintiff had to prove that the defendant 1) consciously attempted to perform the U-turn maneuver and 2) was conscious that injury would probably or likely result.  *Id.* at *15. The Court answered the first question in the affirmative, but found that the plaintiff did not offer evidence of consciousness of injury as there was no dispute that the defendant driver was not aware of the plaintiff's vehicle until the accident occurred. *Id.* at 16.  Therefore, the Court granted summary judgment on the plaintiff's wantonness claim. *Id.* *22.  The Court reached this conclusion although the defendant driver was a professional driver operating a tractor trailer and completing a maneuver contrary to company policy.       In this case, the Court's calculus and the result should be the same. Even though Mr. Logan

consciously moved to the passing lane, he was not aware of the danger–the presence of the sand truck–until it was too late to prevent the collision. Thus, the Plaintiff cannot prove that Mr. Logan was conscious that injury would probably or likely result, and the wantonness claim is due to be dismissed.

## IV.  CONCLUSION

The Plaintiff has failed to make the showing of impaired judgment or inherent recklessness necessary to support submitting a claim of wantonness to the jury.  Even in a pre-*Essary* landscape, at most, Plaintiff has presented evidence of inattention or heedlessness only, which is insufficient to support an allegation of wantonness. Accordingly, Defendants are entitled to judgment as a matter of law on the Plaintiff's claim of wantonness.

/s/ Chad S. Godwin
<br>
Brett A. Ross (ASB-6771-O-76-B)
<br>
Chad S. Godwin (ASB-1054-A-56-G)
<br>
Attorneys for Defendants

OF COUNSEL:

CARR  ALLISON
100 Vestavia Parkway, Suite 200
Birmingham, Alabama 35216
(205) 822-2006
(205) 822-2057 (Facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served a copy of the foregoing pleading upon all counsel of record in this cause by electronically filing the foregoing with the Clerk of the Court using the E-File system which will send notification of such filing to the following on this the 6th day of February, 2012:

David C. Livingston
P. O. Box 1621
Gadsden, AL 35902

Donald R. Rhea
Rhea, Boyd Rhea & Coggin
930 Forrest Avenue
Gadsden, AL 35901

/s/ Chad S. Godwin
Chad S. Godwin
Of Counsel
