IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BOBBY LYNN SHULER, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JACK LOGAN, an individual, )<br>and LANDSPAN, INC. )<br>)<br>Defendants. ) | CV 4:10-1993-RBP |

**MEMORANDUM OPINION**

This cause is before the court on defendants Jack Logan's ("Logan") and Landspan, Inc.'s ("Landspan") Motion for Partial Summary Judgment filed on November 1, 2011. Logan and Landspan claim there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law on the plaintiff Bobby Lynn Shuler's ("plaintiff") claim of wanton operation.

I.  **STANDARD OF REVIEW**

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of

1

proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL AND PROCEDURAL HISTORY

The facts considered favorably to plaintiff are as follows: a motor vehicle accident occurred on October 17, 2008 when defendant Logan caused or allowed a motor vehicle, which was owned by defendant Landspan, to collide with a motor vehicle operated by the plaintiff. The accident happened on Interstate 20 near Alabama Highway 21 and Airport Road in Calhoun County, Alabama. At approximately 2:30 p.m., the plaintiff was traveling westbound in an Alabama Department of Transportation dump truck headed to an accident scene on the east bound lanes of Interstate 20. The plaintiff planned to use a vehicle "cut through" in the median between the east and

westbound lanes of the Interstate to get to the accident scene. The plaintiff slowed his vehicle to ease off to the left toward the "cut through" and was in the process of pulling his vehicle onto the grass shoulder from the left lane of the westbound lanes before beginning a u-turn.

At the time of the accident, the defendant Logan was also traveling westbound on Interstate 20 carrying a load for defendant Landspan. Logan decided to move from the right westbound lane to the left lane because the right lane was moving considerably slower. The defendants assert that Logan at this time attempted a maneuver to avoid striking the plaintiff, but was unable to stop in time, and struck the plaintiff's vehicle in the rear, while the plaintiff alleges that Logan was actually accelerating at the time he struck the plaintiff.[1]

The plaintiff filed this action on April 23, 2010, claiming that the accident resulted from 1) the defendants' negligent operation of the motor vehicle and/or 2) the defendants' wanton operation of the motor vehicle. The defendants' motion for partial summary judgment only addresses the claim for wanton operation.

---

[1] In the pleadings, the parties appear to dispute exactly when and where Logan first saw the plaintiff's vehicle. The defendants assert that Logan first saw the truck as he merged into the left lane, while the plaintiff points to Logan's testimony and suggests that Logan may have been traveling in the left lane for some time before he saw and struck the plaintiff's vehicle. The plaintiff also emphasizes that Logan testified there was nothing obstructing his view of the traffic in front of him once he moved into the left lane. The defendants argue that the plaintiff's claim that Logan was accelerating at the time of the collision is a gross mischaracterization of Logan's testimony:

Q: You had pulled out of a slow-moving right-hand lane and [were] actually gaining speed in the left-hand lane when you first perceived him?...

A: Yes

The defendants argue that while Logan was initially accelerating in order to change lanes, when he realized that there was a danger of collision he began a "stab and steer" maneuver, which means he "hit his brakes as hard as [he] could and tried to steer in a straight line." (Logan Dep. 55:1-11).

### III.     ARGUMENTS

The sole issue before this court at this time is whether a jury could reasonably determine that Logan's conduct was sufficiently egregious so as to be classified as being wanton. *See Allen v. Hill*, 758 So. 2d 574, 576 (Ala. Civ. App. 1999) ("Wantonness is a question of fact for a jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness."). Ala. Code § 6-11-20 defines wantonness as ". . . conduct carried on with a reckless or conscious disregard of the rights or safety of others." Similarly, the Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998) (quoting *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998)). Furthermore, the court in *Scott* held that "[w]antonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability." *Id*.

In support of their motion for partial summary judgment, the defendants cite several cases addressing claims of wanton operation of a motor vehicle. One such case is *South Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795, 796 (Ala. 1990), where the defendant Davis hit a pedestrian who was crossing the street. Distracted by another vehicle that was drifting towards his lane, the defendant did not see the pedestrian until it was too late. *Id*. at 797. The Alabama Supreme Court rejected the plaintiff's claim that Davis' complete failure to watch where he was going in an area he knew to be frequented by pedestrians constituted wanton conduct. *Id*. at 798. The court distinguished wanton conduct from merely negligent conduct, stating, "[n]egligence is usually characterized as inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act

which cannot exist without a purpose or design, a conscious or intentional act." *Id*. Under that standard, the driver's inattention was held not to be enough to meet the definition of wantonness. *Id*.

In *Ex parte Anderson*, 682 So. 2d 467 (Ala. 1996), a defendant, Anderson, was driving her friend to the doctor while it was raining. Anderson attempted to turn left at an intersection while her vision of oncoming traffic was blocked by another vehicle.  Anderson stated that she did not see an oncoming vehicle until she had already crossed into the oncoming lane of traffic. *Id*. at 469. The plaintiff alleged that Anderson had acted wantonly, especially in light of the wet conditions. *Id.* However, the Alabama Supreme Court held, "viewing the evidence most favorably to [the plaintiff], we find no substantial evidence that the defendant Anderson acted 'with knowledge of danger, or with consciousness, that the doing [of the act] would likely result in injury." This, despite the fact that Anderson made the conscious decision to turn while her vision of oncoming traffic was obscured. *Id*. *See also George v. Champion Ins. Co.*, 591 So. 2d 852, 853-54 (Ala. 1991) (holding that the plaintiff failed to provide substantial evidence of wantonness despite the fact that the driver ran a red light while engaged in conversation with her passengers).

The defendants argue that the facts of the instant case are even less egregious than the facts presented in the above cited cases, and thus do not support the plaintiff's claim that Logan acted wantonly. At most, argue the defendants, Logan exercised mere inattention or a failure to exercise good judgment, and that the plaintiff has presented no evidence that Logan consciously disregarded the safety of others, or, especially, of himself. In *Ex parte Essary*, 992 So. 3d 5, 12 (Ala. 2007), the Alabama Supreme Court held that there is a rebuttable presumption that humans in control of their normal faculties do not intentionally put themselves at risk of bodily harm due to basic instincts of self-preservation.

In response, the plaintiff asserts that in order to prove wantonness, the plaintiff must merely prove that the defendant acted recklessly or consciously, but not both. The Alabama Supreme Court has held that what constitutes wanton conduct depends on the facts and circumstances of each case. *See Lewis v. Zell*, 181 So. 2d 101 (Ala. 1955). The plaintiff claims the following facts support a finding of wantonness:

    1. Jack Logan is a trained certified professional truck driver;

    2. Mr. Logan was hauling hazardous materials;

    3. Mr. Logan was traveling down the highway pulling 65 thousand pounds;

    4. Mr. Logan knew the road conditions were wet and/or there had been rain;

    5. There had been stop and go conditions "all day long" in the west (Logan) bound lane of I-20;

    6. The right hand trave lane of I-20 (westbound) was significantly clogged or crowded;

    7. In order to increase his pace, Logan entered into the lefthand (or inside) lane of westbound I-20 and began to accelerate;

    8. At the time he collided with Shuler's truck, Logan was continuing to accelerate.

(Plaintiff's Submission in Opposition to Defendant's Motion for Partial Summary Judgment, Doc. 18, p. 31).

Furthermore, the plaintiff argues that the cases cited by the defendants in support of their motion for partial summary judgment can be distinguished from the present case because those cases involved instances where the driver was distracted, or had an obstructed view of traffic, whereas Logan acted with a greater degree of knowledge, purpose, and even premeditation. The plaintiff asserts that Logan acted despite knowing the risk to both others and himself. With respect to the

rebuttable presumption that individuals do not intentionally put themselves at risk, the plaintiff argues that the defendants have failed to rebut this presumption, because they have made no showing that Logan was, in fact, in possession of his normal faculties at the time of the accident.

In support of their argument in opposition, the plaintiff directs the court to two cases, *Monroe v. Brown*, 307 F. Supp. 2d 1268 (M.D. Ala. 2004), and *Tirey v. Boyte*, No. Civ. A. 04-0441-P-L, 2005 WL 1183212 (S.D. Ala. May 19, 2005), both instances where a federal district court denied the defendant's motion for summary judgment on the plaintiff's claim of wantonness. In *Monroe*, the plaintiff was approaching an intersection while the light was turning yellow, continuing towards the light before stopping at the light as it turned red. 307 F. Supp. 2d at 1269-70. The defendant truck driver assumed the plaintiff was going to continue through the intersection and accelerated to follow the plaintiff through it, only to rear-end the plaintiff when he in fact stopped. *Id*. at 1270. The court denied summary judgment on the issue of wantonness, explaining that the defendant truck driver "knew from his training that it takes a tractor-trailer 80 to 120 yards, on average, to come to a stop." *Id*. Furthermore, the court held that the defendant acted consciously when he accelerated in order to follow the plaintiff's car through the intersection. *Id*. at 1272.

The defendant in *Tirey* was making a lefthand turn from a private drive onto the middle turn lane of the busy road in front of her. 2005 WL 1183212, at *2. The defendant testified that she waited a long time before pulling out and that the road and weather conditions were good. *Id*. The defendant had seen the plaintiff's vehicle when she pulled into the turn lane, but she was not looking in the plaintiff's direction when she collided with the vehicle as she tried to merge onto the westbound lane from the middle turn lane. *Id*. The court denied the defendant's motion for summary judgment on the issue of wantonness, stating that "[w]antonness should be submitted to the jury

7

unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *Id*. at *7 (quoting *Monroe*, 307 F. Supp. 2d at 1272-73).

In further defense of their motion for partial summary judgment, the defendants argue that the court's decision in *Essary* changed the way that wantonness is proved, in that a "circumstantial showing of wantonness," such as that found by the court in *Zell*, is no longer enough. A district court in the Middle District of Alabama recently discussed the *Essary* presumption and its effect on the law of wantonness in Alabama:

> *Essary*'s presumption thus prevents a circumstantial inference of wantonness unless there is a reason to believe that the defendant was suffering from "impaired judgment" or if the conduct was so "inherently reckless" that it would signal the kind of "depravity consistent with disregard of instincts of safety and self-preservation."

*Jinright v. Werner Enterprises*, 607 F. Supp. 2d 1274, 1276-77 (M.D. Ala. 2009). The defendants argue that it is the burden of the *plaintiff*, and not the defendant, to rebut the *Essary* presumption of personal preservation, and that the plaintiff has presented no evidence that the defendant had impaired judgment at the time. Furthermore, the defendants direct the court to several examples where the *Essary* presumption has been called into question that are distinguishable from the defendant's conduct in the present case. *See Johnson v. Baldwin*, 584 F. Supp. 2d 1322 (M.D. Ala. 2008) (driving in reverse on a major interstate); *Clark v. Black*, 630 So. 2d 1012, 1016 (Ala. 1993) (driving through an intersection at a very fast speed after ignoring a stop sign). In contrast, the defendants assert that there is nothing inherently reckless about changing lanes to pass slow traffic, even when the road is wet, there is a wreck nearby, and other vehicles had been slowing down to view the nearby wreck.

Moreover, the defendants reject the plaintiff's argument that Logan had a heightened duty

because of his driving experience and the hazardous nature of the material he was hauling. The defendants assert that while Logan had to observe rules of driving as a professional truck driver, there is no heightened duty of care due to his professional driving status, and that the weight and content of his truck did not trigger any additional statutory precautions or restrictions.

Finally, the defendants present this court's decision in *Cryer v. Werner Ent., Inc.*, No. CV-05-S-696-NE, No. CV-05-S-1539-NE, 2007 WL 4618468 (N.D. Ala. Jan. 23, 2007). In *Cryer*, the defendant driver attempted to make a u-turn across a median on a four-lane highway in moderate traffic. *Id*. at *5-6. The plaintiff was stopped in a nearby parking lot, waiting for a lull in traffic so that he could pull out onto the highway towards the defendant's truck. *Id*. at *6. The plaintiff Cryer pulled onto the highway during a slight lull in traffic. *Id*. at *7. The defendant, seeing the same lull but not the plaintiff, pulled onto the highway as well, right in front of the plaintiff, who could not stop in time to avoid a collision. *Id*. at *8.

> The district court stated:
>
> [I]n order to proceed to a jury on the wantonness claim, plaintiffs need to show that [the defendant] "was conscious, based on existing conditions, that injury was a likely or probabl[e] result of his actions." *Monroe*, 307 F. Supp. 2d at 1271. The evidence simply does not support such a contention. There is not a shred of testimony in the record to contradict Kirby's claim that he did not see Cryer's vehicle, or any other vehicle, at the time he initiated the "U-turn." . . . Whether a prudent person in his position would have engaged in this behavior is a question for a jury; but no reasonable juror could find, based on the evidence presented, that Kirby knew that his actions would likely cause injury to a third party.

*Id*. at *16-17. The court granted the defendant's motion for summary judgment on the plaintiff's wantonness claim, and the defendants in the present case assert that this court's decision should be the same here because Logan simply did not know of the danger until it was too late to prevent to collision.

9

## IV.  COURT'S CONCLUSION

After fully considering the above cited cases of the parties, the court concludes that the defendants' subject motion should be granted.  In addition to the similarity between this case and the cases cited by the defendants, there are distinctive facts of this case which are particularly significant.  First, it was unquestionably not reckless for Logan to make a move from the right lane to the left lane because of the slow movement of the right lane traffic.  Most significantly, it was not reckless for Logan not to anticipate that plaintiff's vehicle in the left lane would begin a turn to the left *between intersections* toward a "cut-through."  There is no reasonable inference that Logan was reckless in continuing his path into the left lane and beginning a "stab and steer" action when he saw the plaintiff's vehicle.

There is an issue of fact, but only as to the negligence claim.

This the 21st day of February, 2012.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**